PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/24/96**

TENTH CIRCUIT

PATRICK MCKINNON,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff-Appellant,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 95-5192
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MICHAEL W. CARR, Warden,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendant-Appellee.⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 93-C-409)

_____

Mac Oyler, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Alecia A. George, Assistant Attorney General, State of Oklahoma, (W.A. Drew Edmondson, Attorney General of Oklahoma and Steven Lohr, Assistant Attorney General, State of Oklahoma, Oklahoma City, Oklahoma with her on the brief), for Defendant-Appellee.

_____

Before ANDERSON, GODBOLD,[*] and MURPHY, Circuit Judges.

_____

PER CURIAM:

---

[*]⠀⠀⠀The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

Petitioner McKinnon was convicted in Oklahoma for rape and oral sodomy. The Oklahoma Court of Criminal Appeals affirmed on the merits, McKinnon v. State, 752 P.2d 833 (Okla. Crim. App. 1988), and in an unpublished opinion affirmed the denial of post-conviction relief.

At trial the victim testified that she accompanied McKinnon to his apartment at night. She stated that she was stripped of her clothing, handcuffed, and tied to the bed with bandannas, clothespins were fastened to her breasts, and she was subjected to sexual intercourse and repeated acts of oral sodomy. She was taken home about 5:30 a.m. and promptly complained to police. Police immediately took her to petitioner's home to make a warrantless arrest.

The federal district court denied a writ of habeas corpus and a contemporaneous motion seeking alleged exculpatory evidence. The court treated the motion for exculpatory evidence as part of the habeas corpus claim and denied it on procedural default grounds because petitioner had not raised it in the trial court or in his merits appeal. Also, the court found that McKinnon had demonstrated no cause and prejudice and had not shown that a fundamental miscarriage of justice would result if his claim were not considered. Petitioner admitted both sexual intercourse and oral sodomy. A major issue was whether the victim consented. The alleged exculpatory evidence sought, while it might have cast doubt on some of the victim's descriptions of details of the sexual events, was unrelated to the major issue of consent.

2

Petitioner's major claims spring from his arrest and the entry into and search of his home around 6:00 a.m. With the victim, officers came to the petitioner's home, where the alleged events had occurred, to make a warrantless arrest. The officers knocked, identified themselves, and plaintiff opened the door. The officers neither committed nor threatened violence. Petitioner was asked his name, and he identified himself. The district court found that one of the officers told petitioner he was under arrest for rape. There were no exigent circumstances. McKinnon asked if he could get dressed, and at least two of the officers followed him to his bedroom where they saw items in plain view. One of the officers called for an "ID officer," who arrived about ten minutes later to "process" the crime scene. He seized evidence in plain view, took pictures of the exterior and interior of the house and of items in plain view, and drew a diagram of McKinnon's bedroom.

During the afternoon of the same day another officer prepared an affidavit for a search warrant, relying on information obtained as a result of conversations with one of McKinnon's roommates and with the officers involved in the arrest and the initial entry. McKinnon asserts that the arrest, the entry into his home, the seizure of items, and the search by the ID officer were unconstitutional and that they tainted the subsequently issued search warrant.

The court held that McKinnon's Fourth Amendment claims were foreclosed by Stone v. Powell, 428 U.S. 465 (1976), but the court considered them pursuant to a Sixth Amendment ineffective counsel claim. The district court did not err in holding that the arrest at the doorway was not invalid. As in U. S. v. Santana, 427 U.S. 38 (1976), the suspect was

3

visible, standing in the threshold of his doorway, open to public view. He was in a place sufficiently public that he had no legitimate expectation of privacy. The officers had knocked, identified themselves, neither displayed nor threatened violence, and petitioner had opened the door. He had acknowledged their authority by asking if he could dress. Petitioner relies upon Payton v. New York, 445 U.S. 573 (1980). That case challenged the constitutionality of New York statutes that authorized police officers to enter a private residence without a warrant and, with force if necessary, to make a routine felony arrest. Officers went to Payton's apartment intending to arrest him without a warrant. There was no response to their knock on the door; they summoned emergency assistance and used crowbars to break open the door and enter the apartment. No one was there. They seized a shell casing seen in plain view. Payton contains language that describes the Fourth Amendment as drawing a firm line at the entrance to one's house, but, on its facts, it has no application to a doorway arrest made in the circumstances of the present case.

The officers did not inappropriately enter McKinnon's home. Acquiescing in their authority, McKinnon asked to be allowed to dress. He was followed to his bedroom. He was not handcuffed. Officers would have been derelict had they not followed him to be certain that he made no effort to escape.

The victim testified that for a time she was fastened to the bed by handcuffs and bandannas. Bandannas were found in the room and were introduced. No handcuffs were ever found. The prosecutor produced a different set of handcuffs in the courtroom, but they

4

were never introduced into evidence. They were displayed in the presence of the jury. The Prosecutor clicked them shut and attempted to establish by testimony of the victim that the sound they made was similar to the sound made by handcuffs (never located) that the victim said attached her to the bed. The prosecutor described this use of the handcuffs as "demonstrative evidence." The handcuffs remained in view on the prosecutor's table until time to argue the case to the jury. The defense asked that they be removed, and the court required they be covered up or discreetly removed. In closing argument the prosecutor referred to the handcuffs and how they clicked. This use of an item not in evidence, allegedly operating in a manner similar to handcuffs that were never found, was egregiously improper. The court did not err in finding, in view of the overwhelming evidence, that it did not invalidate the conviction.

Officers found in McKinnon's home, shared with two roommates, several magazines having sexually suggestive titles and devoted to sexual bondage. The court did not err in holding that references to the magazines, in examination of witnesses, was not inappropriate.

We find no constitutional violations requiring grant of habeas corpus. McKinnon's other issues were either barred because not raised on direct appeal or lack merit and require no comment.

The decision of the district court denying habeas corpus relief is AFFIRMED.