TYMKOVICH, Circuit Judge,
concurring.
I write separately to emphasize what I see as unnecessarily broad language explaining the “constructive entry” doctrine. Constructive entry is deemed to have occurred where police, although they do not cross the threshold and physically enter a home as required by Payton v. New York, 445 U.S. 573, 576, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), use excessive coercion to force someone from the home. United States v. Maez, 872 F.2d 1444 (10th Cir.1989) (applying Payton). Under the majority’s formulation, this question submits to a bright line rule: any “show of force” that induces a suspect to leave the home — • whether or not excessively coercive — is tantamount to formal arrest regardless of the circumstances. I would take a more nuanced, totality of the circumstances approach, and would not deem every show of force as equivalent to a formal arrest.
As the majority correctly notes, analyzing whether police illegally seized a suspect turns on the nature of the encounter: did the incident constitute a consensual encounter, an investigatory stop, or an arrest? See Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir.2007).[1] A formal arrest is a seizure “characterized by [a] highly intrusive or lengthy search or detention.” Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir.2000). To arrest a suspect, the police must have probable cause. Id. An investigatory detention, in contrast, requires police to have only reasonable suspicion. United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir.1993) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). “While Terry stops are seizures under the Fourth Amendment, they constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause.” Id. at 1462 (10th Cir.1993) (quoting Michigan v. Summers, 452 U.S. 692, 699, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). Some cases have recognized that even coercive motel knock-and-talk encounters supported by reasonable suspicion are not necessarily arrests. United States v. Jerez, 108 F.3d 684, 693 (7th Cir.1997). A more limited encounter may profitably be analyzed under a reasonableness standard. Nonetheless, the majority is correct in viewing the facts here as evolving into a formal arrest.
But in construing those facts, the majority opinion takes them a step further and strongly implies that even limited, non-consensual knock-and-talk encounters are arrests if the suspect indicates any reluctance to open the door. In reaching this conclusion, the majority relies on our decision in Maez, 872 F.2d at 1449-1451. In *1172 Maez, ten police officers, FBI agents, and a SWAT team surrounded a trailer that was occupied by the defendant, his wife, and his children. Id. at 1450. The SWAT team — dressed in black — pointed rifles at the trailer and over a loudspeaker ordered everyone to exit the trailer. Id. While this was happening, the defendant and his wife also saw the police handcuff their fifteen-year-old son who had been standing outside the trailer. Under this show of authority, Maez agreed to surrender to the police.
We concluded that this “governmental intrusion, without consent and without a warrant, was in the form of extreme coercion which effected the arrest of Maez.” Id. at 1451. (emphasis added). We then explained that the arrest should be treated as an arrest occurring inside Maez’s home. See id. (“[I]t is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home.”) Because the arrest occurred inside Maez’s home, we held the police needed either a warrant or probable cause plus exigent circumstances in order to effectuate the arrest. Id. at 1451; see also Payton, 445 U.S. at 590, 100 S.Ct. 1371.
Maez stands for the proposition that when police use extremely coercive tactics to force a defendant outside his home, such an encounter can be analyzed as an arrest. The decision left open the question of how courts should analyze less intrusive — but still non-consensual — encounters. Examples include routine investigations where police wish to speak with a suspect or witness in following up leads — investigations which may quickly exonerate someone erroneously accused of misconduct. While a police visit to someone’s home may include uniformed officers who are persistent in their efforts to speak with a resident (“open the door, we need to talk to you” versus “come out with your hands up”), it seems to me that the coercion inherent in such an encounter does not necessarily rise to the level of an arrest. I fear under the majority’s formulation, as soon as police take a position at a door and knock persistently for more than a few seconds, the encounter constitutes an arrest, which at least on these facts needlessly broadens the constructive entry doctrine.[2]
The majority also relies on United States v. Flowers, 336 F.3d 1222, 1227 (10th Cir.2003). See Majority Op. 1168. This reliance, however, is misplaced. Flowers is not a constructive entry case. The police in Flowers actually entered the defendant’s home in order to arrest him. Flowers, 336 F.3d at 1224. We evaluated whether the defendant consented to open *1173 ing the door and allowing the police to enter his home. See id. at 1227 (“[A] reasonable person confronted by police officers outside his door at night and a command by one of the officers to allow them to enter, would have believed that he had to open the door of his home and submit to the show of authority.”) (emphasis added). We did not, however, determine whether the tactics the police used to make the defendant open the door were sufficiently coercive to constitute a constructive entry.
Other cases have recognized that brief non-consensual knock-and-talk encounters may be analyzed as an investigatory stop. See, e.g., United States v. Ray, 199 F.Supp.2d 1104, 1111 (D.Kan.2002) (“A knock and talk is ordinarily consensual unless coercive circumstances such as unreasonable persistence by the officers turns the encounter into an investigatory stop.”); United States v. Ponce Munoz, 150 F.Supp.2d 1125, 1133 (D.Kan.2001) (same); see also United States v. Barker, 437 F.3d 787, 789-90 (8th Cir.2006) (relying on a Terry analysis to evaluate a coercive knock-and-talk encounter); but see Fisher v. City of San Jose, 509 F.3d 952, 960 (9th Cir.2007), en banc rehearing granted, 519 F.3d 908 (9th Cir.2008) (explaining Payton applies to all in-house Terry seizures, regardless of whether the police cross the threshold); United States v. Saari, 272 F.3d 804, 809 (6th Cir.2001) (same). Similarly, many cases rely on a Terry reasonableness standard in evaluating encounters involving a defendant constructively seized inside his home after he or another occupant voluntarily opens the door. See, e.g., United States v. Beaudoin, 362 F.3d 60, 67-71 (1st Cir.2004), vacated on other grounds, Champagne v. United States, 543 U.S. 1102, 125 S.Ct. 1025, 160 L.Ed.2d 1009 (2005) (relying on a Terry analysis to conclude it was reasonable for an officer to order a suspect, after he opened his door, to step out of the doorway of his motel room); United States v. Gori, 230 F.3d 44, 54-57 (2d Cir.2000) (relying on a Terry analysis to conclude it was reasonable for officers to order several occupants of a known stash house to step outside for a limited investigation); United States v. Portillo-Portillo, No. 07-2070, 267 Fed.Appx. 760, 763-66, 2008 WL 538487, at *3-*6 (10th Cir. Feb.28, 2008) (relying on a Terry analysis to conclude it was reasonable for a Border Patrol agent to seize a suspected illegal alien inside his motel room by asking him a question).
The majority claims several additional cases support the proposition that Payton applies to all in-house Terry seizures, regardless of whether the police actually enter the home: United States v. Mowatt, 513 F.3d 395, 399-400 (4th Cir.2008); United States v. Conner, 127 F.3d 663, 666 (8th Cir.1997); and United States v. Johnson, 626 F.2d 753, 757 (9th Cir.1980). Because none of these cases created such a per se rule, these cases do not support the majority’s position.
Mowatt involves an illegal search. The police sought to gain visual access to the interior of the defendant’s apartment because the officers wanted to verify whether the defendant was smoking marijuana. To force the defendant to open the door, the officers repeatedly knocked and ordered the defendant to let them inside. After an unspecified period of time, the defendant opened the door about twelve inches. Mowatt, 513 F.3d at 397. The court concluded the police conducted an illegal search because “[i]t is well established that a search occurs for Fourth Amendment purposes when officers gain visual or physical access to a room ... after an occupant opens the door not voluntarily, but in response to a demand under color of authority.” Id. at 400.
*1174 In reaching this decision, the court distinguished United States v. Taylor, 90 F.3d 903 (4th Cir.1996). In Taylor, the police similarly knocked on the defendant’s door for “several minutes” and ordered the defendant to open it. Id. at 906. When the defendant finally opened the door, one of the officers noticed a machine gun on the dining room floor. Id. The court concluded the officers did not conduct an illegal search because the defendant’s “front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public.” Id. at 909. The court in Mowatt distinguished Taylor by explaining “the police [did not] demand visual access to the residence in Taylor, wherein the officer merely observed the interior of the residence from a public vantage point.” Mowatt, 513 F.3d at 400 n. 4 (internal quotation marks omitted). Mowatt therefore did not create a per se rule. Mowatt merely requires police to have a search warrant if they demand visual access to a person’s home. Mowatt’s holding, therefore, does not apply to the present case because — like in Taylor — the police did not demand such access to Reeves’s room. Instead, they merely wanted Reeves to answer some questions about a crime that occurred earlier in the day.
Conner also did not create a per se rule. The court concluded the officers triggered Payton because they entered the defendants’ motel room without their consent. Conner, 127 F.3d at 666. In dicta, the court suggested Payton would have applied even if the officers had not crossed the threshold: “Our analysis of the entry of the motel room under Payton necessarily rejects the government’s argument that we should assess the police officers’ command to open the door under a reasonableness standard.” Id. at 666 n. 3. In a subsequent case, however, the Eighth Circuit implicitly held that Conner did not create such a per se rule. See United States v. Barker, 437 F.3d 787, 789-90 (8th Cir.2006). In Barker, the court relied on a Terry analysis to conclude that a less intrusive — but still coercive — knock-and-talk encounter was reasonable Id.
Johnson likewise did not create a per se rule. In Johnson, the court concluded the officers arrested the defendant in his doorway because the police were brandishing guns when he opened his door. The court explained,
In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home. Otherwise, arresting officers could avoid illegal “entry” into a home simply by remaining outside the doorway and controlling the movements of suspects within through the use of weapons that greatly extend the “reach” of the arresting officers.
Johnson, 626 F.2d at 757. This language does not indicate that all non-consensual knock-and-talk encounters trigger Payton. Instead, the court merely suggests that highly coercive encounters involving officers brandishing weapons are the functional equivalent of an arrest.
In the end, it is unnecessary in this case to resolve the question of whether a per se rule exists, or whether a less intrusive— but still non-consensual — knock-and talk encounter can be evaluated under the Terry reasonableness standard. Here, the police tactics were sufficiently coercive under Maez to be characterized as an arrest. Four officers surrounded Reeves’s room at 3 a.m. For at least twenty minutes they pounded on Reeves’s door and window, *1175 while yelling and loudly identifying themselves as police officers. Because the officers used extremely coercive tactics to force Reeves to open his door, this encounter should be characterized as an arrest.

. I note, however, that the district court did not analyze whether Reeves consented to opening the door. On a different record, it seems that consent could be freely given even with police present outside the door.

. A broad view of the constructive entry doctrine is not without its critics. For instance, Professor LaFave, commenting on the concept that the “location of the arrestee” matters, observes:
But this position, it is submitted, is unsound from the standpoint of both principle and pragmatism. For one thing, it is certainly contrary to the language of Payton which, again, merely says that the "threshold may not reasonably be crossed without a warrant.” ... Secondly, this position is contrary to the rationale of Payton .... [T]he warrant requirement makes sense only in terms of the entry, rather than the arrest; the arrest itself is no more threatening or humiliating than a street arrest. This certainly means that if the arrest can be accomplished without entry, it should be deemed lawful notwithstanding the absence of a warrant, even if the arrestee was just inside rather than on the threshold at the time.
3 Wayne R. LaFave, Search & Seizure § 6.1(e), 301-02 (4th ed.2007) (internal quotation marks and citations omitted). Professor LaFave would not deem every show of force as coercion constituting an arrest. Id. at 307-08.