# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1220

_____

United States of America,

        Appellee,

v.

Christopher M. Barker,

        Appellant.

   \*  Appeal from the United States
   \*  District Court for the Western
   \*  District of Missouri.

_____

Submitted: October 10, 2005
Filed: February 14, 2006

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Christopher Michael Barker was convicted of possession of stolen firearms and being a felon in possession of firearms. Barker appeals the district court's[1] denial of his motion to suppress evidence of the firearms. Finding that the evidence was lawfully obtained, this court affirms.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

I.

On June 12, 2003, Springfield police officer Kurtis Schmidt was dispatched to a motel. When he arrived, motel employee Jim Williams reported that he had observed two men unloading "four to six" long rifles into motel room 147. Williams also said he overheard one of them talking on a cell phone. Although Williams was not sure what he was saying, Williams did believe he was discussing a meeting.

After officer John Brewer arrived at the motel, the two officers—in uniform—approached room 147. Officer Schmidt crouched behind a vehicle in the parking lot, his handgun drawn at "low ready." Brewer knocked on the door. No one responded. Schmidt asked dispatch to telephone the room. The phone inside the room rang. No one answered. At some point, the curtain moved and a male—later identified as defendant Barker—looked out the window.

Although the district court found the evidence contradictory as to how much time elapsed—Brewer says a few seconds, Schmidt guesses between 3 to 10 minutes—Barker eventually opened the door. Brewer told him to come outside and to keep his arms away from his body and not make any sudden movements. Brewer's gun was drawn and was "down to my side, kind of down behind my leg."

As Barker exited the room, another man, later identified as Shane Logan, came out behind him, hesitated, and then ran away. Brewer ran after him; Schmidt stayed with Barker. Brewer apprehended Logan and brought him back to the front of the motel room. Brewer asked Logan if he had been convicted of any crimes, and he admitted that he had. Brewer then asked Logan if he was a convicted felon, which he also admitted.

Schmidt then performed a protective sweep of the motel room. He observed rifles, and other items, including compact discs, DVDs, hunting paraphernalia, two-way radios, and cash. Schmidt told Barker and Logan they were being detained, and gave them *Miranda* warnings.

Logan consented to a search of the room. Nine long guns and a pistol were recovered. Barker consented to a search of his vehicle. A handgun was found there.

Barker was charged with being a felon in possession of firearms and possessing stolen firearms. He moved to suppress evidence of the firearms. After a hearing, the magistrate recommended denying the motion. Barker objected. The district court overruled the objection and accepted the magistrate's recommendation.

This court reviews the denial of a motion to suppress *de novo*, and the underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials. *United States v. Coleman*, 349 F.3d 1077, 1083 (8th Cir. 2003). This court will uphold the district court's decision on the motion to suppress if, on review of the record, "any reasonable view of the evidence supports" the district court's decision. *United States v. Bloomfield*, 40 F.3d 910, 913 (8th Cir. 1994) (en banc)

II.

As an alternative basis to admit evidence of the firearms, the district court concluded that the encounter at the motel-room door was a lawful stop because the officers had reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). If the officers had reasonable suspicion of criminal activity, they properly stopped and briefly detained Barker at the door. *See id.*

In determining whether the officers had reasonable suspicion, there is not a "neat set of legal rules." *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005), quoting *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996). This court examines the "totality of the circumstances" to determine if the officers had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also United States v. Cortez*, 449 U.S. 411, 417-418 (1981). The observations of the officers are considered "as a whole, rather than as discrete and disconnected occurrences." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987).

A reasonable view of the evidence supports the district court's conclusion that the officers had reasonable suspicion to conduct the *Terry* stop. Informant Williams told Schmidt that he saw two men unload several firearms into a motel room and that he overheard them planning a meeting. Williams "came forward personally to give information that was immediately verifiable at the scene," thereby imparting veracity to his report. *See Adams v. Williams*, 407 U.S. 143, 146-147 (1972). Schmidt testified he knew that a lot of criminal activity takes place in the motel. The district court found that, because it was June in a metropolitan area, the officers could reasonably conclude that the men were not hunting. When Brewer knocked on the door, no one answered. Dispatch called the room, but still no one came to the door. Thus, by the time Barker finally answered the door, the officers had reasonable suspicion to stop Barker at the door. *See United States v. Watts*, 7 F.3d 122, 124 (8th Cir. 1993) (police officers had reasonable suspicion to stop a van in a residential area after a citizen reported that men were moving items, including long guns, from his neighbor's apartment into the van).

Barker cites this court's decision in *United States v. Conner*, 127 F.3d 663, 665 (8th Cir. 1997). Footnote 3 of that case says that the *Terry* reasonableness standard does not apply to an officer's command to open a motel room door, where the officer controls the situation. *Id.* at 666 n.3. The critical difference here is that the district court found that officer Brewer requested the occupants to come outside, spoke in a calm, conversational manner, and did not announce himself as a police officer. *See id.* n.2 (officers "knocked on the door longer and more vigorously than would an ordinary member of the public," which was "loud enough to awaken a guest in a nearby room and to cause another to open her door," and the officers "identified themselves as police and demanded [suspect] to 'open up'"). *Conner* is inapposite to this case.

Barker argues that the officers did not have reasonable suspicion, because none of the acts observed was criminal. True, Missourians have the state constitutional right to keep and bear arms. *See Mo. Const., art. I, § 23*; *see also United States v. Brown*, 408 F.3d 1016, 1018 (8th Cir. 2005). However, this court must consider the circumstances through the eyes of the officers, because they are "trained to cull significance from behavior that would appear innocent to the untrained observer." *Poitier*, 818 F.2d at 683; *see also Cortez*, 449 U.S. at 418 (evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement"). This court must also defer to the district court's decision, upholding it if supported by "any reasonable view of the evidence." *Bloomfield*, 40 F.3d at 913. While no specific act here amounts by itself to reasonable suspicion, the district court's conclusion of reasonable suspicion is supported by the totality of the circumstances.

III.

The judgment is affirmed.

_____