FILED
United States Court of Appeals
Tenth Circuit

May 7, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOUGLAS ALAN REEVES,

Defendant-Appellant.

No. 07-8028

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 06-CR-27-CAB)**

---

John T. Carlson, Assistant Federal Public Defender, Denver, Colorado, (Raymond P. Moore, Federal Public Defender, Denver, Colorado, and Robert R. Rogers, Assistant Federal Public Defender, Cheyenne, Wyoming, with him on the briefs) for Defendant-Appellant.

Lisa E. Leschuck, Assistant United States Attorney, (John R. Green, Acting United States Attorney, Cheyenne, Wyoming, with her on the brief) for Plaintiff-Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Douglas Alan Reeves was arrested, without a warrant, when he answered his motel door at 3:30 am. Reeves answered the door only after officers made phone calls to his room, knocked on his door and window with flashlights, and loudly identified themselves as police officers over the course of at least twenty minutes. Subsequent to his arrest, weapons and ammunition were found in his room and on his person. Reeves entered a conditional guilty plea to one count of Felon in Possession of a Firearm and one count of Felon in Possession of Ammunition. 18 U.S.C. §§ 922(g)(1), 924(a)(2). The plea agreement preserved his right to appeal the district court's denial of his motion to suppress evidence of the weapons, premised on a violation of the Fourth Amendment. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Because we hold Reeves was seized inside his room without a warrant in violation of *Payton v. New York*, 445 U.S. 573 (1980), and, because the government has not demonstrated that Reeves' subsequent consents to search were not tainted by the unlawful seizure, we **REVERSE** the district court's denial of Reeves' motion to suppress.

## I.

This court reviews a district court's ruling on a motion to suppress by considering the evidence in the light most favorable to the prevailing party, here the government. *United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006). The facts, therefore, taken in the light most favorable to the government are as follows.

On March 13, 2005, at 9:30 pm Carbon County Sheriff's Office deputies and Baggs, Wyoming police officers responded to an aggravated assault call. During the investigation, an EMT who treated the victim and who also worked as a clerk in a liquor store, informed officers she heard Reeves make a comment earlier the same day at the liquor store that "sometimes you gotta do what you gotta do and God tells you to do it." This statement was substantially similar to a statement the assault victim heard her assailant make. As a result, Reeves became a suspect in the assault investigation. Reeves was also known to the officers to be a felon and they had received reports from citizens that he was in possession of a handgun.

At 2:43 am, Baggs Chief of Police Mark Lapinskas, Carbon County Sheriff's Sergeant Michael Morris, Deputy Edward Fourman, and Deputy Dave Fagnant arrived at the Country Inn Motel, where Reeves was known to have been living for three months. Deputy Fourman and Sergeant Morris requested the manager call Reeves and ask him to step outside. The manager made multiple calls to Reeves' room, but there was no response. During this time, Chief Lapinskas and Deputy Fagnant kept watch on Reeves' room. After receiving no response to the phone calls, Chief Lapinskas, Deputy Fourman, and Sergeant Morris approached the motel room and Deputy Fagnant went to the back of the motel to watch the rear exit.

Outside Reeves' motel room, the officers commenced knocking on the door and window, using their police-issued black metal flashlights. The officers knocked consistently for at least twenty minutes while yelling and identifying themselves as police officers.[1] Deputy Fourman testified the officers "banged on the window very loudly with [their] flashlights." R. Vol. 3 at 10. During this time period, Reeves did not come to the door or otherwise acknowledge the officers' presence. After approximately twenty minutes of banging and yelling, Reeves came to the motel room door.

Chief Lapinskas testified that Reeves opened the door and stepped out of the room. As Reeves exited, the officers observed he wore a holster. The officers testified that they could not, however, determine whether the holster held a gun. Chief Lapinskas ordered Reeves to show his hands, withdrew his taser, and aimed its target light at Reeves. Reeves complied and was taken into custody. When patted down, five .44 caliber rounds were found in his pocket. Chief Lapinskas

---

[1]The district court made no findings regarding the length of time the officers knocked on Reeves' door. Although we consider the facts in the light most favorable to the government, we note that the time spent knocking was most likely more than twenty minutes. Relying on his incident report which was prepared a few days after the incident, Deputy Fourman testified that the officers arrived at the Country Inn Motel at 2:43 am and Reeves exited his room after 3:30 am. When asked to allocate those forty-five minutes, Fourman explained "[w]hen I first got there, I went to the manager's so that probably took ten minutes at that point. It probably took another twenty minutes of knocking, consistent knocking, before he exited the room." R. Vol. 3, at 29. This leaves at least fifteen unaccounted minutes.

performed a protective sweep of the motel room, observing a revolver lying on the floor, two rifles in an open closet, and boxes of ammunition on a storage shelf. The revolver was in plain view to the officers located outside the room.

The officers read Reeves his *Miranda* rights and requested consent to search the room. Reeves initially consented, but quickly withdrew his consent and the officers ceased the search. Before the officers withdrew from the room, however, the revolver on the floor was seized. Reeves was taken to the Baggs Town Hall at approximately 3:50 am and interviewed about the assault. He denied involvement and volunteered to submit to testing. The interview lasted about one hour. Reeves was then transported seventy-five miles from Baggs to Rawlins where he was taken to the hospital to submit to a sexual assault kit. He remained at the hospital from 6:30 am to 8:00 am. Reeves was then transported to the Sheriff's Office in Rawlins and the officers resumed the interview that began at the Baggs Town Hall. The officers again requested permission to search Reeves' motel room. At 8:20 am, Reeves signed a form granting permission to search the room. The search of the motel room produced two long-barreled rifles and one .22 caliber handgun. Reeves was tried on the sexual assault charges and the trial ended in a hung jury. He was subsequently transferred from state to federal custody to face federal firearm charges.

## II.

On appeal, Reeves argues he was arrested inside his home in violation of the Fourth Amendment and that the evidence subsequently obtained was tainted and should be suppressed.[2] He claims he only opened his door as a result of coercive police conduct and this coercion effectuated an arrest inside his home at the moment he opened his door. Because this was a routine felony arrest and there were no exigent circumstances, he argues, the subsequent search of his room was barred by the Fourth Amendment.

In reviewing the district court's denial of a motion to suppress, this court considers the evidence in the light most favorable to the government. *Cheromiah*, 455 F.3d at 1220. This court must accept the district court's factual findings unless those findings are clearly erroneous. *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo. *Id*.

In *Payton v. New York*, the Supreme Court held that, absent exigent circumstances, police officers may not enter an individual's home without consent to make a warrantless routine felony arrest even if probable cause to arrest the individual exists. 445 U.S. at 576. *Payton* held "the Fourth Amendment has

---

[2]The officers knew at the time of the incident that Reeves had been living at the Country Inn Motel for at least three months. There is no question Reeves' motel room was his home for purposes of the Fourth Amendment. *Hoffa v. United States*, 385 U.S. 293, 301 (1966).

drawn a firm line at the entrance to the house." *Id*.; *see also Kirk v. Louisiana*, 536 U.S. 635, 638 (2000) (per curiam). That line can be breached by conduct other than physical entry. This court has held that officers need not physically enter the home for *Payton* to apply. *United States v. Maez*, 872 F.2d 1444, 1451 (10th Cir. 1989). Rather, "it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." *Id*. (quotation omitted). As a result, although the officers were positioned outside the motel room, Reeves was inside his room at the time he opened his door and we analyze this encounter as occurring within his home.

Encounters between police officers and citizens generally can be categorized as arrests, investigatory stops, or consensual encounters. *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). Consensual encounters do not implicate the Fourth Amendment.[3] *Id*. Both arrests and investigatory stops, however, are seizures under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968). *Payton*'s protections apply to all Fourth Amendment seizures of persons inside their homes.[4] 445 U.S. at 590 ("In terms that apply

---

[3]So-called "knock and talks" fall into this category of encounter. *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006) ("[A] 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion.").

[4]The scenario in which an individual voluntarily opens his door to the police and is subsequently seized while still inside his home, is not before us and we express no opinion on such a situation. Cases analyzing such scenarios,

(continued...)

equally to seizures of property and *to seizures of persons*, the Fourth Amendment

has drawn a firm line at the entrance to the house. Absent exigent circumstances,

that threshold may not reasonably be crossed without a warrant." (emphasis

added)); *Kirk*, 536 U.S. at 638 ("[P]olice officers need either a warrant or

probable cause plus exigent circumstances in order to make a lawful entry into a

home."). As a result, labeling an encounter in the home as either an investigatory

stop or an arrest is meaningless because *Payton*'s requirements apply to all

seizures.[5]  *United States v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001).

---

[4](...continued)
therefore, are not relevant to the analysis of this appeal, where the question is only whether Reeves voluntarily opened his door. Accordingly, the concurrence's reliance on such cases is misplaced. *See United States v. Barker*, 437 F.3d 787, 790 (8th Cir. 2006) (concluding a reasonableness standard may apply when officers "requested" a defendant step outside his room, as opposed to issuing a "command"); *United States v. Beaudoin*, 362 F.3d 60, 67-69 (1st Cir. 2004) ("The police did not order Beaudoin out of the doorway until he had voluntarily opened the door and spoken with them."), *vacated on other grounds sub nom. Champagne v. United States*, 543 U.S. 1102 (2005); *United States v. Gori*, 230 F.3d 44, 51-55 (2d Cir. 2000) (holding the defendant voluntarily opened his door and no longer had an expectation of privacy in the entrance area); *United States v. Portillo-Portillo*, No. 07-2070, 2008 WL 538487, at * 3 (10th Cir. Feb. 28, 2008) (unpublished) (applying an investigatory stop analysis to defendants who voluntarily opened the door to police). *United States v. Taylor* is even less relevant. 90 F.3d 903, 908 (4th Cir. 1996) (holding officers did not conduct a search by looking into an open window because there was no expectation of privacy in the area and the items seen through the window provided the officers with probable cause and exigent circumstances to enter the home).

[5]The concurrence is correct in noting that one other circuit has applied the investigatory stop framework to a non-consensual encounter in a home with a closed door. *See United States v. Jerez*, 108 F.3d 684, 691-93 (7th Cir. 1997). Our circuit and several others, however, have correctly applied *Payton v. New*

(continued...)

That *Payton* applies to all warrantless seizures in the home is the only

logical outcome. If we were to hold otherwise, it would allow a seizure in the

home when only reasonable suspicion exists, yet prohibit a seizure in the home

when an officer has probable cause to arrest, but no exigent circumstances. It

cannot be the case that *Payton*'s "firm line at the entrance to the house" offers

less protection to individuals for whom probable cause to arrest does not exist.

445 U.S. at 576.

*A.*

We first consider whether Reeves was seized inside his room and opened

the door as a result of coercive police conduct. "[A] person has been 'seized'

---

[5](...continued)
*York*, 445 U.S. 573 (1980), to such encounters. *United States v. Flowers*, 336 F.3d 1222, 1227 (10th Cir. 2003); *United States v. Maez*, 872 F.2d 1444, 1451 (10th Cir. 1989); *see also United States v. Mowatt*, 513 F.3d 395, 399-400 (4th Cir. 2008) ("It is well established that a search occurs for Fourth Amendment purposes 'when officers gain visual or physical access to a . . . room after an occupant opens the door not voluntarily, but in response to a demand under color of authority.'" (quoting *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997)); *United States v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001) ("*Payton*'s holding that warrantless seizures of persons in their homes violate the Fourth Amendment, absent exigent circumstances, applies to this case regardless of whether the officers at issue were conducting an arrest or an investigatory detention."); *Conner*, 127 F.3d at 666 n.3 ("Our analysis of the entry of the motel room under *Payton* necessarily rejects the government's argument that we should assess the police officers' command to open the door under a reasonableness standard."); *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980) (applying *Payton* to the seizure of an individual who opened his door when agents misrepresented their identities).

within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In situations where the individual could not or would not wish to leave, even absent the police presence, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991). Circumstances that indicate a seizure include, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."[6] *Mendenhall*, 446 U.S. at 554; *Maez*, 872 F.2d at 1450.

Opening the door to one's home is not voluntary if ordered to do so under color of authority. In *Maez*, the defendant was a suspect in a bank robbery. 872

---

[6]The concurrence seems to believe that cases in which officers seize an individual inside his home, but do not cross the threshold themselves (what it calls "constructive entry" cases) are subject to a different seizure standard. Concurrence at 1. Under its theory, police conduct in such cases must be "excessively coercive" to violate *Payton*. *Id*. As explained above, however, it is the location of the defendant, not the officer, which governs whether the heightened Fourth Amendment protections of the home apply. Thus, so called "constructive entry" cases and regular entry cases are analytically indistinguishable for purposes of examining whether a seizure occurred. Furthermore, such an approach is not supported by this court's precedent. *Flowers*, 336 F.3d at 1226 n.2; *Maez*, 872 F.2d at 1450.

F.2d at 1446. The police planned Maez's arrest over the course of at least three hours, but did not obtain a warrant. *Id*. at 1446-47. Ten officers, including a SWAT team, surrounded Maez's home and, with rifles pointed at the trailer, asked the occupants to come out one at a time over loudspeakers. *Id*. at 1447, 1449-50. The occupants complied and Maez was taken into custody. *Id*. at 1450. This court concluded "*Payton* is violated where there is such a show of force that a defendant comes out of a home under coercion and submits to being taken in custody." *Id*. at 1451; *see also United States v. Al-Azzawy*, 784 F.2d 890, 893 (9th Cir. 1985) (holding defendant was seized inside his home when officers surrounded his trailer and ordered him through a bullhorn to leave the trailer and drop to his knees); *United States v. Morgan*, 743 F.2d 1158, 1163-64 (6th Cir. 1984) (holding the police seized the defendant inside his home when the defendant was ordered out of his home with his hands up).

Further, this court has held that if an individual's decision to open the door to his home to the police is not made voluntarily, the individual is seized inside his home. *United States v. Flowers*, 336 F.3d 1222, 1226 n.2 (10th Cir. 2003) ("[W]e hold that Flowers' decision to open his door was not voluntary and he was arrested while in his home."). In *Flowers*, the officers suspected the defendant was selling liquor illegally. *Id*. at 1223. After knocking on the door of the defendant's home and inquiring if they could purchase alcohol, the officers were offered wine through a hole in the wall of the home. *Id*. at 1224. The officers

-11-

told the defendant, "in a firm tone of voice, 'Tulsa Police Department, open the door.'" *Id.* We concluded "a reasonable person confronted by police officers outside his door at night and a command by one of the officers to allow them to enter, would have believed that he had to open the door of his home and submit to the show of authority." *Id.* at 1226 n.2.

In *United States v. Jerez*, the Seventh Circuit held that when officers knocked on a motel room door for three minutes, identified themselves as officers, asked the occupants to open the door, knocked on the window for one-and-a-half to two minutes, and shined a flashlight into the window, the subsequent opening of the door by the defendant was a submission to a show of authority and a seizure within the meaning of the Fourth Amendment. 108 F.3d 684, 691-93 (7th Cir. 1997). It concluded,

> The three minutes of silence by Room 161's occupants, when combined with the other circumstances of this case, especially the lateness of the hour, amounted to a refusal by Mr. Jerez and Mr. Solis to answer the door. Once the officers had been refused admittance, their continued efforts to rouse the occupants out of bed certainly prevented them from ignoring the continued requests and from maintaining the privacy and solitude of their dwelling.

*Id*. at 691-92 (footnote omitted); *see also United States v. Conner*, 127 F.3d 663, 665-66 (8th Cir. 1997) (holding when four officers knocked on the defendants' motel door three times, identified themselves as police, and demanded the defendant "open up," the defendants did not voluntarily consent to the entry). The Sixth Circuit determined a seizure occurred when,

-12-

the officers positioned themselves in front of the only exit from Defendant's apartment with their guns drawn. They knocked forcefully on the door and announced that they were the police. Upon opening the door, Defendant was instructed to come outside, which he did. Under these circumstances, a reasonable person would have believed that he was not free to leave.

*Saari*, 272 F.3d at 808; *see also*, *United States v. Mowatt*, 513 F.3d 395, 400 (4th Cir. 2008) (holding the defendant's acquiescence to demands to open his door constituted a search).

The officers' conduct outside Reeves' motel room would lead a reasonable person to believe he was not free to ignore the officers. *See Mendenhall*, 446 U.S. at 554; *Bostick*, 501 U.S. at 436 . Although there is no evidence the officers gave Reeves a direct order to open his door, the officers' actions were effectively a command to open the door. The record demonstrates that three officers pounded on Reeves' door and window while yelling and loudly identifying themselves as police officers. They continued this conduct consistently for at least twenty minutes. This encounter began between 2:30 and 3:00 in the morning, a time which must be taken into consideration when analyzing the coerciveness of the encounter. *Flowers*, 336 F.3d at 1226 n.2; *see also Jerez*, 108 F.3d at 690.[7] A reasonable person faced with several police officers consistently

---

[7]The Seventh Circuit placed significant emphasis on the late hour of an encounter. The court stated:

Because our law and legal traditions long have recognized the special

(continued...)

-13-

knocking and yelling at their door for twenty minutes in the early morning hours would not feel free to ignore the officers' implicit command to open the door. *Bostick*, 501 U.S. at 435. As a result, when Reeves answered his door he did so in response to a show of authority by the officers and he was seized inside his home. *See Maez*, 872 F.2d at 1450.

*B.*

We next turn to the question of whether Reeves' arrest inside his home was justified by probable cause and exigent circumstances. Officers may enter an individual's home without consent and conduct a warrantless arrest if both probable cause and exigent circumstances exist. *Payton*, 445 U.S. at 590. Exceptions to the warrant requirement, however, are "few in number and carefully delineated." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) (quotation omitted). The government bears the burden of establishing that exigent circumstances made the warrantless entry necessary. *United States v. Cuaron*, 700 F.2d 582, 586 (10th Cir. 1983). In determining whether the government has met its burden, we "evaluate the circumstances as they would have appeared to prudent, cautious,

---

[7](...continued)
vulnerability of those awakened in the night by a police intrusion at their dwelling place, our Fourth Amendment jurisprudence counsels that, when a knock at the door comes in the dead of night, the nature and effect of the intrusion into the privacy of the dwelling place must be examined with the greatest of caution.

*Jerez*, 108 F.3d at 690.

-14-

and trained officers." *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998). Here, even assuming the officers had probable cause to arrest Reeves, no exigent circumstances existed to permit the officers to enter Reeves' room.

The district court found that the officers had to act because Reeves was a felon and they had knowledge he was leaving immediately for California. The district court's finding that the officers knew of Reeves' travel plans at the time they took him into custody is clearly erroneous. The undisputed testimony of Deputy Fourman at the suppression hearing was that he learned of Reeves' possible travel to California from the motel manager *after* Reeves had already been handcuffed and taken into custody. There was no evidence presented that the officers knew of Reeves' travel plans before they seized him. As a result, this information could not support a conclusion that exigent circumstances existed at the time the officers approached Reeves' room.

The government argues exigent circumstances were supported by officer and victim safety. To demonstrate that officer or victim safety justifies a warrantless entry, the government must show, "(1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry was reasonable." *United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007).

The government points to Reeves' appearance in his doorway and the officers' reasonable belief that the holster he wore could contain a handgun. This

event, however, occurred only after Reeves had submitted to the officers' show of authority and was seized. A factor that develops post-seizure cannot be used to justify exigency. *See Mowatt*, 513 F.3d at 399. The government has pointed to no evidence that could support exigency at the time Reeves was seized.[8] As a consequence, no exigent circumstances existed to provide an exception to the warrant requirement.

*C.*

Finally, we consider whether Reeves' unlawful arrest rendered his subsequent consents to the search of his room invalid and the evidence gathered in the search inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Reeves claims the evidence seized from his room was tainted by the unlawful seizure and should be excluded. When a consensual search is preceded by an unlawful arrest, the government must prove the consent was given voluntarily. It must also "establish a break in the causal connection between the illegality and the evidence thereby obtained." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994) (quotation omitted).

The district court concluded that Reeves' consent was voluntary, but did not reach the issue of taint. Whether the taint of an illegal arrest has dissipated is

---

[8]The government makes references to victim and public safety in its brief, but fails to make any argument as to how these considerations could support exigency. We note the record is devoid of any mention of a victim or member of the public whose safety may have been at risk during this encounter.

analyzed under the factors articulated in *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975): "1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct." *Melendez-Garcia*, 28 F.3d at 1054.

The government argues the district court's determination that Reeves' consent was voluntary is not clearly erroneous. It does not, however, attempt to demonstrate a break in the causal connection between the unlawful arrest and the consent. This court's case law makes clear that the government bears the burden of demonstrating both voluntariness and a break in the causal connection. *Id.* Although the tests do overlap to some extent, evidence obtained by consent after an unlawful seizure should be admitted "only if it is demonstrated that the consent was *both* voluntary and not an exploitation of the prior illegality." *Id*. at 1054-55 (quotation omitted). "We require the government to demonstrate that any taint of an illegal search or seizure has been purged or attenuated not only because we are concerned that the illegal seizure may affect the voluntariness of the defendant's consent, but also to effectuate the purposes of the exclusionary rule." *Id*. at 1054.

Although the district court did not address the taint issue, the government has not asked this court to remand this case to the district court for additional fact finding. Nor has the government argued that facts bearing on the question of attenuation are in dispute. The government has completely failed to address

-17-

whether there was a break in the causal relationship between the unlawful arrest and the subsequent search.[9]  Because the government has failed to identify anything in the record demonstrating in any way that the taint from the unlawful seizure was purged or attenuated before Reeves gave consent to search his motel room, this court cannot say the causal connection between the illegality and the consent was broken.

## III.

Because Reeves was seized inside his home in violation of *Payton's* warrant requirement and because the government has failed to demonstrate that the taint of the unlawful seizure had dissipated prior to obtaining Reeves' consent to search his room, the district court's denial of the motion to suppress is **REVERSED**.

---

[9]A review of the record did not reveal any obvious evidence of attenuation.

07-8028, *United States v. Reeves*

**TYMKOVICH**, J., concurring.

I write separately to emphasize what I see as unnecessarily broad language explaining the "constructive entry" doctrine. Constructive entry is deemed to have occurred where police, although they do not cross the threshold and physically enter a home as required by *Payton v. New York*, 445 U.S. 573, 576, 590 (1980), use excessive coercion to force someone from the home. *United States v. Maez*, 872 F.2d 1444 (10th Cir. 1989) (applying *Payton*). Under the majority's formulation, this question submits to a bright line rule: any "show of force" that induces a suspect to leave the home—whether or not excessively coercive—is tantamount to formal arrest regardless of the circumstances. I would take a more nuanced, totality of the circumstances approach, and would not deem every show of force as equivalent to a formal arrest.

As the majority correctly notes, analyzing whether police illegally seized a suspect turns on the nature of the encounter: did the incident constitute a consensual encounter, an investigatory stop, or an arrest? *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007).[1] A formal arrest is a seizure "characterized by [a] highly intrusive or lengthy search or detention." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). To arrest a suspect, the police

---

[1] I note, however, that the district court did not analyze whether Reeves consented to opening the door. On a different record, it seems that consent could be freely given even with police present outside the door.

must have probable cause. *Id.* An investigatory detention, in contrast, requires police to have only reasonable suspicion. *United States v. Perdue*, 8 F.3d 1455, 1461 (10th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "While *Terry* stops are seizures under the Fourth Amendment, they constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause." *Id.* at 1462 (10th Cir. 1993) (quoting *Michigan v. Summers*, 452 U.S. 692, 699 (1981)). Some cases have recognized that even coercive motel knock-and-talk encounters supported by reasonable suspicion are not necessarily arrests. *United States v. Jerez*, 108 F.3d 684, 693 (7th Cir. 1997). A more limited encounter may profitably be analyzed under a reasonableness standard. Nonetheless, the majority is correct in viewing the facts here as evolving into a formal arrest.

But in construing those facts, the majority opinion takes them a step further and strongly implies that even limited, non-consensual knock-and-talk encounters are arrests if the suspect indicates any reluctance to open the door. In reaching this conclusion, the majority relies on our decision in *Maez*, 872 F.2d at 1449–1451. In *Maez*, ten police officers, FBI agents, and a SWAT team surrounded a trailer that was occupied by the defendant, his wife, and his children. *Id.* at 1450. The SWAT team—dressed in black—pointed rifles at the trailer and over a loudspeaker ordered everyone to exit the trailer. *Id.* While this

-2-

was happening, the defendant and his wife also saw the police handcuff their fifteen-year-old son who had been standing outside the trailer. Under this show of authority, Maez agreed to surrender to the police.

We concluded that this "governmental intrusion, without consent and without a warrant, was in the form of *extreme coercion* which effected the arrest of Maez." *Id.* at 1451. (emphasis added). We then explained that the arrest should be treated as an arrest occurring inside Maez's home. *See id.* ("[I]t is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home.") Because the arrest occurred inside Maez's home, we held the police needed either a warrant or probable cause plus exigent circumstances in order to effectuate the arrest. *Id.* at 1451; *see also Payton*, 445 U.S. at 590.

*Maez* stands for the proposition that when police use *extremely coercive* tactics to force a defendant outside his home, such an encounter can be analyzed as an arrest. The decision left open the question of how courts should analyze less intrusive—but still non-consensual—encounters. Examples include routine investigations where police wish to speak with a suspect or witness in following up leads—investigations which may quickly exonerate someone erroneously accused of misconduct. While a police visit to someone's home may include uniformed officers who are persistent in their efforts to speak with a resident ("open the door, we need to talk to you" versus "come out with your hands up"),

-3-

it seems to me that the coercion inherent in such an encounter does not necessarily rise to the level of an arrest. I fear under the majority's formulation, as soon as police take a position at a door and knock persistently for more than a few seconds, the encounter constitutes an arrest, which at least on these facts needlessly broadens the constructive entry doctrine.[2]

The majority also relies on *United States v. Flowers*, 336 F.3d 1222, 1227 (10th Cir. 2003). *See* Majority Op. 11–12. This reliance, however, is misplaced. *Flowers* is not a constructive entry case. The police in *Flowers* actually entered the defendant's home in order to arrest him. *Flowers*, 336 F.3d at 1224. We evaluated whether the defendant consented to opening the door and allowing the police to enter his home. *See id.* at 1227 ("[A] reasonable person confronted by

---

[2] A broad view of the constructive entry doctrine is not without its critics. For instance, Professor LaFave, commenting on the concept that the "location of the arrestee" matters, observes:

> But this position, it is submitted, is unsound from the standpoint of both principle and pragmatism. For one thing, it is certainly contrary to the language of *Payton* which, again, merely says that the "threshold may not reasonably be crossed without a warrant." . . . Secondly, this position is contrary to the rationale of *Payton*. . . . [T]he warrant requirement makes sense only in terms of the entry, rather than the arrest; the arrest itself is no more threatening or humiliating than a street arrest. This certainly means that if the arrest can be accomplished without entry, it should be deemed lawful notwithstanding the absence of a warrant, even if the arrestee was just inside rather than on the threshold at the time.

3 Wayne R. LaFave, *Search & Seizure* § 6.1(e), 301-02 (4th ed. 2007) (internal quotation marks and citations omitted). Professor LaFave would not deem every show of force as coercion constituting an arrest. *Id.* at 307-08.

-4-

police officers outside his door at night *and a command by one of the officers to allow them to enter*, would have believed that he had to open the door of his home and submit to the show of authority.") (emphasis added). We did not, however, determine whether the tactics the police used to make the defendant open the door were sufficiently coercive to constitute a constructive entry.

Other cases have recognized that brief non-consensual knock-and-talk encounters may be analyzed as an investigatory stop. *See*, *e.g.*, *United States v. Ray*, 199 F. Supp. 2d 1104, 1111 (D. Kan. 2002) ("A knock and talk is ordinarily consensual unless coercive circumstances such as unreasonable persistence by the officers turns the encounter into an investigatory stop."); *United States v. Ponce Munoz*, 150 F. Supp. 2d 1125, 1133 (D. Kan. 2001) (same); *see also United States v. Barker*, 437 F.3d 787, 789–90 (8th Cir. 2006) (relying on a *Terry* analysis to evaluate a coercive knock-and-talk encounter); *but see Fisher v. City of San Jose*, 509 F.3d 952, 960 (9th Cir. 2007), *en banc rehearing granted*, No. 04-16095, 2008 WL 752621 (Mar. 14, 2008) (explaining *Payton* applies to all in-house *Terry* seizures, regardless of whether the police cross the threshold); *United States v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001) (same). Similarly, many cases rely on a *Terry* reasonableness standard in evaluating encounters involving a defendant constructively seized inside his home after he or another occupant voluntarily opens the door. *See, e.g.*, *United States v. Beaudoin*, 362 F.3d 60, 67–71 (1st Cir. 2004), *vacated on other grounds*, *Champagne v. United States*, 543 U.S. 1102

(2005) (relying on a *Terry* analysis to conclude it was reasonable for an officer to order a suspect, after he opened his door, to step out of the doorway of his motel room); *United States v. Gori*, 230 F.3d 44, 54–57 (2d Cir. 2000) (relying on a *Terry* analysis to conclude it was reasonable for officers to order several occupants of a known stash house to step outside for a limited investigation); *United States v. Portillo-Portillo*, No. 07-2070, 2008 WL 538487, at *3–*6 (10th Cir. Feb. 28, 2008) (relying on a *Terry* analysis to conclude it was reasonable for a Border Patrol agent to seize a suspected illegal alien inside his motel room by asking him a question).

The majority claims several additional cases support the proposition that *Payton* applies to all in-house *Terry* seizures, regardless of whether the police actually enter the home: *United States v. Mowatt*, 513 F.3d 395, 399–400 (4th Cir. 2008); *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997); and *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980). Because none of these cases created such a per se rule, these cases do not support the majority's position.

*Mowatt* involves an illegal search. The police sought to gain visual access to the interior of the defendant's apartment because the officers wanted to verify whether the defendant was smoking marijuana. To force the defendant to open the door, the officers repeatedly knocked and ordered the defendant to let them inside. After an unspecified period of time, the defendant opened the door about

twelve inches. *Mowatt*, 513 F.3d at 397. The court concluded the police conducted an illegal search because "[i]t is well established that a search occurs for Fourth Amendment purposes when officers gain visual or physical access to a room . . . after an occupant opens the door not voluntarily, but in response to a demand under color of authority." *Id.* at 400.

In reaching this decision, the court distinguished *United States v. Taylor*, 90 F.3d 903 (4th Cir. 1996). In *Taylor*, the police similarly knocked on the defendant's door for "several minutes" and ordered the defendant to open it. *Id.* at 906. When the defendant finally opened the door, one of the officers noticed a machine gun on the dining room floor. *Id.* The court concluded the officers did not conduct an illegal search because the defendant's "front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public." *Id.* at 909. The court in *Mowatt* distinguished *Taylor* by explaining "the police [did not] demand visual access to the residence in *Taylor*, wherein the officer merely observed the interior of the residence from a public vantage point." *Mowatt*, 513 F.3d at 400 n.4 (internal quotation marks omitted). *Mowatt* therefore did not create a per se rule. *Mowatt* merely requires police to have a search warrant if they demand visual access to a person's home. *Mowatt*'s holding, therefore, does not apply to the present case because—like in *Taylor*—the police did not demand such access to Reeves's room. Instead, they

merely wanted Reeves to answer some questions about a crime that occurred earlier in the day.

*Conner* also did not create a per se rule. The court concluded the officers triggered *Payton* because they entered the defendants' motel room without their consent. *Conner*, 127 F.3d at 666. In dicta, the court suggested *Payton* would have applied even if the officers had not crossed the threshold: "Our analysis of the entry of the motel room under *Payton* necessarily rejects the government's argument that we should assess the police officers' command to open the door under a reasonableness standard." *Id.* at 666 n.3. In a subsequent case, however, the Eighth Circuit implicitly held that *Conner* did not create such a per se rule. *See United States v. Barker*, 437 F.3d 787, 789–90 (8th Cir. 2006). In *Barker*, the court relied on a *Terry* analysis to conclude that a less intrusive—but still coercive—knock-and-talk encounter was reasonable. *Id.*

 *Johnson* likewise did not create a per se rule. In *Johnson*, the court concluded the officers arrested the defendant in his doorway because the police were brandishing guns when he opened his door. The court explained,

> In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home. Otherwise, arresting officers could avoid illegal "entry" into a home simply by remaining outside the doorway and controlling the movements of suspects within through the use of weapons that greatly extend the "reach" of the arresting officers.

*Johnson*, 626 F.2d at 757. This language does not indicate that *all* non-consensual knock-and-talk encounters trigger *Payton*. Instead, the court merely suggests that highly coercive encounters involving officers brandishing weapons are the functional equivalent of an arrest.

In the end, it is unnecessary in this case to resolve the question of whether a per se rule exists, or whether a less intrusive—but still non-consensual—knock-and talk encounter can be evaluated under the *Terry* reasonableness standard. Here, the police tactics were sufficiently coercive under *Maez* to be characterized as an arrest. Four officers surrounded Reeves's room at 3 a.m. For at least twenty minutes they pounded on Reeves's door and window, while yelling and loudly identifying themselves as police officers. Because the officers used extremely coercive tactics to force Reeves to open his door, this encounter should be characterized as an arrest.